UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE ABADIN and CHRISTOPHER BELLAND, derivatively on behalf of STAN LEE MEDIA, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> MARVEL ENTERTAINMENT, INC., a Delaware corporation, MARVEL ENTERPRISES, INC., STAN LEE, and ARTHUR M. LIEBERMAN, <br><br> Defendants. | 09 Civ. 0715 (PAC) |

**MEMORANDUM OF LAW IN SUPPORT OF MARVEL'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

PAUL, HASTINGS, JANOFSKY
& WALKER LLP
David Fleischer
Lawrence J. Conlan
75 East 55th Street
New York, NY 10022-3205
(212) 318-6000

*Attorneys for Defendant*
    Marvel Entertainment, Inc.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 2

BACKGROUND AND RELEVANT FACTS ........................................................... 2

    Marvel, Lee and the Marvel Characters ............................................................ 2

    The SLE Employment Agreement and the Marvel Employment Agreement ................. 3

    The Rise and Fall of SLMI ............................................................................... 4

    Peter F. Paul's Securities Fraud ....................................................................... 5

    The Lawsuits Against Marvel ........................................................................... 6

ARGUMENT .......................................................................................................... 7

I.      PLAINTIFFS LACK DERIVATIVE STANDING TO SUE .................... 7

II.     PLAINTIFFS FAIL TO SATISFY THE PLEADING STANDARD ................................................................................ 8

III.    PLAINTIFFS' LANHAM ACT § 43(a) CLAIM AGAINST MARVEL FAILS BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED, IT IS UNSUPPORTED BY PLAUSIBLE FACTS, AND THERE IS NO ALLEGATION THAT SLMI EVER USED THE MARKS ............................. 9

    A.    The statute of limitations for this claim has expired ..................... 9

    B.    Plaintiffs fail to allege a sufficient factual basis to render the infringement claim  covering the MARVEL trademark plausible ........................................................................... 11

    C.    Even if SLMI somehow acquired rights in the MARVEL and STAN LEE PRESENTS trademarks, which it did not, SLMI abandoned these rights through non-use .......................... 12

IV.    THE CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT SHOULD BE DISMISSED BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED AND THE ALLEGATIONS HAVE NO PLAUSIBLE FACTUAL BASIS ........... 12

    A.    The statute of limitations for this claim has expired ................... 12

    B.    Plaintiffs' allegations regarding Marvel's knowing interference is wholly conclusory and lacks a plausible factual basis ............................................................................... 14

# TABLE OF CONTENTS
### (continued)

**Page**

V.  THE CLAIM OF AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND/OR CONSPIRACY TO BREACH FIDUCIARY DUTY SHOULD BE DISMISSED BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED AND THERE IS NO FACTUAL BASIS FOR THE CLAIM............................................. 14

    A.  The statute of limitations for this cause of action has expired............................................................................. 15

    B.  There is no factual basis for the aiding and abetting claim to render it plausible................................................. 17

    C.  The claim for conspiracy is not plausible because it fails to allege specific times, facts or circumstances of a conspiracy...... 18

VI.  PLAINTIFFS' DEMANDS FOR THE IMPOSITION OF A CONSTRUCTIVE TRUST AND FOR AN ACCOUNTING OF PROFITS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS................................................................... 19

    A.  Plaintiffs have no basis for their causes of action for imposition of a constructive trust and for an accounting of profits from Marvel because their claims depend on Lee's ownership in the Marvel characters and the statute of limitations on any copyright ownership claim by Lee expired decades ago ................................................... 19

    B.  The statutes of limitations for plaintiffs' constructive trust and accounting claims have expired ........................................... 21

VII.  PLAINTIFFS SHOULD BE REQUIRED TO POST A BOND FOR COSTS .......................................................................... 23

CONCLUSION.................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AHA Sales, Inc. v. Creative Bath Prods., Inc.*,
   58 A.D.3d 6, 867 N.Y.S.2d 169 (2d Dep't 2008) ................................................................. 17

*Alexander & Alexander Inc. v. Fritzen*,
   68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986) ......................................................................... 15

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................... 8, 9, 14

*Atlanta Shipping Corp., Inc. v. Chemical Bank*,
   818 F.2d 240 (2d Cir. 1987) ............................................................................................ 23

*Barksdale v. Robinson*,
   211 F.R.D. 240 (S.D.N.Y. 2002) ..................................................................................... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 8, 18

*Beverly Hills Design Studio (N.Y.) Inc. v. Morris*,
   126 F.R.D. 33 (S.D.N.Y. 1989) ....................................................................................... 23

*Brady v. Lynes*,
   No. 05 Civ. 6540 (DAB), 2008 WL 2276518 (S.D.N.Y. June 2, 2008) ................................ 15

*Bressler v. Liebman*,
   No. 96 Civ. 9310 (LAP), 1997 WL 466553 (S.D.N.Y. Aug. 14, 1997) ................................. 23

*Brownstone Inv. Group v. Levy*,
   468 F. Supp. 2d 654 (S.D.N.Y. 2007) ............................................................................... 18

*Cary Oil Co. v. MG Refining & Mktg., Inc.*,
   90 F. Supp. 2d 401 (S.D.N.Y. 2000) ............................................................................ 12, 13

*Ciambrello v. County of Nassau*,
   292 F.3d 307 (2d Cir. 2002) ........................................................................................... 18

*Cintas Corp. v. Unite Here*,
   601 F. Supp. 2d 571 (S.D.N.Y. 2009) ................................................................................. 9

*Fezzani v. Bear, Stearns & Co.*,
   No. 99 Civ. 0793 (RCC), 2004 WL 1781148 (S.D.N.Y. Aug. 10, 2004) ............................... 15

iii

*GNK Enters., Inc. v. Conagra, Inc.*,
  197 B.R. 444 (Bankr. S.D.N.Y. 1996) .................................................................11

*Gristede's Foods, Inc. v. Unkechauge Nation*,
  No. 06-CV-1260 (CBA), 2008 WL 3334032 (E.D.N.Y. Aug. 8, 2008) ..............9, 10

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990) ................................................................................18

*In re Bank of N.Y. Derivative Litig.*,
  320 F.3d 291 (2d Cir. 2003) ...............................................................................7

*Johnson & Johnson v. Guidant Corp.*,
  525 F. Supp. 2d 336 (S.D.N.Y. 2007) .................................................................9

*Kartiganer Assocs., P.C. v. Town of New Windsor*,
  108 A.D.2d 898, 485 N.Y.S.2d 782 (2d Dep't 1985) .........................................13

*Kaufman v. Cohen*,
  307 A.D.2d 113, 760 N.Y.S.2d. 157 (1st Dep't 2003) ...................................16, 17

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006) ..............................................................................14

*Kolbeck v. LIT Am., Inc.*,
  939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) ................17

*Lerner v. Allaire*,
  No. Civ. 3:02CV00964 (AWT), 2003 WL 22326504 (D. Conn. Sept. 30, 2003) ....7

*Margo v. Weiss*,
  No. 96 Civ. 3842 (MBM), 1998 WL 2558 (S.D.N.Y. Jan. 5, 1998), *aff'd*, 54
  U.S.P.Q.2d 1769 (2d Cir. 2000) .........................................................................20

*Medtech Prods. Inc. v. Ranir, LLC*,
  596 F. Supp. 2d 778 (S.D.N.Y. 2008) .........................................................9, 18, 19

*Merchant v. Levy*,
  92 F.3d 51 (2d Cir. 1996) .............................................................................19, 22

*Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*,
  23 F. Supp. 2d 439 (S.D.N.Y. 1998) ..................................................................15

*Oilex A.G. v. Mitsui & Co. (U.S.A.), Inc.*,
  669 F. Supp. 85 (S.D.N.Y. 1987) ......................................................................24

*Olympia & York Maiden Lane Co., LLC v. Tax Comm'n of City of N.Y.*,
  233 B.R. 662 (Bankr. S.D.N.Y. 1999) ................................................................11

*Phillips-Van Heusen Corp. v. Calvin Clothing Co.,*
  444 F. Supp. 2d 250 (S.D.N.Y. 2006)......................................................................12

*Santa-Rosa v. Combo Records,*
  471 F.3d 224 (1st Cir. 2006)................................................................................20

*Selletti v. Carey,*
  173 F.R.D. 96 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 104 (2d. Cir. 1999)......................23

*Silverman v. CBS Inc.,*
  870 F.2d 40 (2d Cir. 1989)..................................................................................12

*Solow Bldg. Co. v. Nine West Group, Inc.,*
  No., 00 Civ. 7685 (DC), 2001 WL 736794 (S.D.N.Y. June 29, 2001), *aff'd*, 48 F.
  App'x 15 (2d Cir. 2002).......................................................................................10

*State Street Assocs. L.P. v. N.Y. State Urban Dev. Corp.,*
  323 B.R. 544 (Bankr. N.D.N.Y. 2005) ..................................................................11

*Tolliver v. McCants,*
  No. 05 Civ. 10840 (JFK), 2009 WL 804114 (S.D.N.Y. Mar. 25, 2009) ...........19, 21, 22

*Tomas v. Gillespie,*
  385 F. Supp. 2d 240 (S.D.N.Y. 2005)....................................................................22

*Whitney Holdings, Ltd. v. Givotovsky,*
  988 F. Supp. 732 (S.D.N.Y. 1997)..................................................................15, 16

**STATUTES & RULES**

15 U.S.C. § 1117(a) ......................................................................................................24

15 U.S.C. § 1127 ...........................................................................................................12

Bankr. Code § 108 ..................................................................................................10, 11

Bankr. Code § 362 .........................................................................................................11

Colo. Rev. Stat. § 7-107-402(1) (2008) .........................................................................7

N.Y. C.P.L.R § 204(a) ...................................................................................................11

N.Y. C.P.L.R. § 213 .................................................................................................10, 15

N.Y. C.P.L.R. § 214...............................................................................................12, 13, 15

FED. R. CIV. P. 8 ...............................................................................................................8

FED. R. CIV. P. 12(b)(6) ...................................................................................................2

FED. R. CIV. P. 23.1 .................................................................................................................7

S.D.N.Y. R. 54.2 ..............................................................................................................2, 23

Defendant Marvel Entertainment, Inc., ("Marvel"), formerly known and also incorrectly sued as Marvel Enterprises, Inc., submits this memorandum of law in support of its motion for an order (1) pursuant to FED. R. CIV. P. 12(b)(6) and 23.1(b)(1) dismissing, in its entirety, the amended complaint of plaintiffs Jose Abadin ("Abadin") and Christopher Belland ("Belland"), suing derivatively on behalf of Stan Lee Media, Inc. ("SLMI") and (2) requiring plaintiffs to post a bond for costs pursuant to Local Rule 54.2 before being allowed to proceed any further with their claims.

## PRELIMINARY STATEMENT

At its core, this action is based on plaintiffs' claim that SLMI is the owner, by assignment, of trademarks and copyrights covering the name Marvel and certain famous characters that Marvel has been exploiting for decades (the "Marvel characters"). Plaintiffs allege that Stan Lee ("Lee") assigned certain rights to SLMI's alleged corporate predecessor, Stan Lee Entertainment, Inc., in a 1998 employment agreement. Based on that agreement, plaintiffs claim that SLMI owns the rights to the Marvel characters, and that SLMI is entitled, among other things, to Marvel's profits from the exploitation of the characters since 1998. Plaintiffs' claims, however, are fundamentally implausible and legally defective.

As a threshold matter, plaintiffs lack derivative standing to sue on behalf of SLMI. Abadin and Belland admittedly held no SLMI stock until late 1999, more than a year after the core of defendants' alleged conduct occurred in 1998. Because the core conduct of which plaintiffs complain predates their ownership of SLMI stock, they cannot act as derivative plaintiffs here and their claims must be dismissed.

In addition, the applicable statutes of limitations on each of plaintiffs' causes of action have long since expired, and plaintiffs can offer no reasonable excuse for the delay in bringing their claims. Plaintiffs' claims arose in late 1998 and expired, at the latest, in 2004.

Neither SLMI's bankruptcy proceedings nor any alleged conduct by defendants prevented plaintiffs from timely asserting their claims.

Finally, plaintiffs fail to allege sufficient factual bases to make their claims plausible. Their conclusory allegations concerning Marvel's misconduct, Marvel's knowledge of Lee's alleged conveyance of the Marvel characters to SLMI, and Marvel's alleged intentional interference with Lee's contractual and fiduciary duties to SLMI, are simply formulaic recitations of the elements of plaintiffs' causes of action, bereft of factual content. Plaintiffs' allegations are insufficient to survive the pleading standard governing motions to dismiss under FED. R. CIV. P. 12(b)(6). For all of these reasons, the amended complaint should be dismissed in its entirety as a matter of law.

## BACKGROUND AND RELEVANT FACTS[1]

### Marvel, Lee and the Marvel Characters

Since 1939, Marvel (and its corporate predecessors) have been creating popular characters and publishing comic books. Amended complaint ("Am. comp.") ¶ 29. From approximately 1941 through 1998, Stan Lee was an employee of Marvel (*Id.*, ¶¶ 29, 46) and his employment relationship with Marvel is ongoing. *Id.*, ¶ 54. As an employee of Marvel, Lee helped create iconic characters such as Spider-Man, Fantastic Four, X-Men, Incredible Hulk and many others. *Id.*, ¶¶ 38, 43. Marvel has, for many years, developed, produced, marketed and exploited the Marvel characters in various media. *Id.*, ¶ 25. Marvel registered the copyrights and trademarks to the Marvel characters and the MARVEL name in the late 1960s and early 1970s, and is the owner of record. *Id.*, ¶ 37-40; *see also* Pinkus declaration, ¶ 3, exhibit A

---

[1] The facts are taken from the amended complaint, and from the documents annexed to the declaration of Lawrence J. Conlan ("Conlan declaration") and the declaration of Carol Pinkus ("Pinkus declaration") in support of Marvel's request for judicial notice accompanying this motion.

2

(copies of certificates of registration for the Marvel characters filed with the U.S. Copyright Office); Conlan declaration, ¶ 17, exhibit P (copies of trademark registrations of the MARVEL mark filed with the U.S. Patent and Trademark Office).

<u>The SLE Employment Agreement and the Marvel Employment Agreement</u>

In or around late 1998, Lee entered into an employment agreement (the "SLE Employment Agreement") with the newly formed Stan Lee Entertainment, Inc. ("SLE"), the alleged corporate predecessor to SLMI. Am. comp., ¶ 49. The SLE Employment Agreement specifically referenced the terms of a separate employment agreement Lee had entered into with Marvel (the "Marvel Employment Agreement"), expressly acknowledging Lee's commitment to work ten to fifteen hours per week for Marvel. *Id.*, ¶ 54. The SLE Employment Agreement expressly acknowledged Lee's obligations to Marvel, and there can be no reasonable dispute that SLE was aware of the Marvel Employment Agreement, and the terms therein, at the time the SLE Employment Agreement was executed.

The SLE Employment Agreement also provided that, subject to certain conditions, Lee would convey his rights to unspecified intellectual property that he might have or subsequently create, including:

> all right, title and interest [he] may have or control, now or in the future, in the following: Any and all ideas, names, title, characters, symbols, logos, designs, likenesses, visual representations, artwork, stories, plots, scripts, episodes, literary property, and the conceptual universe related thereto, including my name and likeness (the "Property") *which will or have been in whole or part disclosed in writing to, published, merchandised, advertised, and/or licensed by [SLMI]* . . . . [Emphasis added.]

*Id.*, ¶ 50.

The amended complaint does not contain a single allegation describing any "Property" that Lee may have had or controlled or that was disclosed, published, merchandised

or licensed by SLE, or SLMI, any time at or after the date the SLE Employment Agreement was

executed.[2]

The Rise and Fall of SLMI

In July 1999, almost a year after SLE was formed, Stan Lee Media, Inc., a

Colorado corporation, ("SLMI") was co-founded by Lee and Peter F. Paul ("Paul") as an

internet-based production and marketing company. *See* Conlan declaration, ¶ 2, exhibit A

(SLMI 10-KSB, Part I, Item 1). SLMI is the alleged successor in interest to SLE. Am. comp., ¶

7. In November 1999, approximately one year after Lee entered into the Marvel Employment

Agreement and the SLE Employment Agreement, Belland acquired shares in SLMI. *Id.*, ¶ 14.

One month later, in December 1999, Abadin acquired his shares in SLMI. *Id.*, ¶ 13.

SLMI's existence was brief. On February 16, 2001 SLMI and its wholly-owned

Delaware subsidiary with the same name filed chapter 11 petitions in the United States

Bankruptcy Court for the Central District of California asserting they had no assets and over

eleven million dollars in liabilities. Conlan declaration, ¶ 3, exhibit B (bankruptcy petitions of

SLMI and its Delaware subsidiary, Stan Lee Media, Inc.). On August 1, 2002, SLMI was

administratively dissolved by the Colorado Secretary of State. *Id.*, ¶ 4, exhibit C (Colorado

Secretary of State summary reflecting, *inter alia*, the dissolution of SLMI on August 1, 2002).

On September 13, 2004, upon a default motion in an SEC administrative proceeding under

section 12(j) of the Securities Exchange Act, an order was issued revoking the registration of the

securities of SLMI. *Id.*, ¶ 5, exhibit D (SEC Release No. 50349 reflecting an order from an SEC

administrative proceeding). Ultimately, the jointly administered bankruptcy cases of SLMI and

---

[2] SLMI's 10-KSB filed with the Securities and Exchange Commission ("SEC") on March 20, 2000, more than a year after the SLE Employment Agreement, makes no mention of any of the valuable intellectual property rights relating to the Marvel characters SLMI now claims to own. *See* Conlan declaration, ¶ 2, exhibit A (SLMI's 10KSB, Part I, Item 1).

its Delaware subsidiary were dismissed by an order of the bankruptcy court entered on December 6, 2006 without any plan of reorganization having been confirmed. *Id.*, ¶ 6, exhibit E (order of the U.S. Bankruptcy Court for the Central District of California entered on December 6, 2006).

Peter F. Paul's Securities Fraud

On August 2, 2004, in connection with the collapse of SLMI, Paul was charged in a superseding indictment in the United States District Court for the Eastern District of New York with conspiracy to commit securities fraud in violation of Rule 10b-5 and 18 U.S.C. §§ 371 and 3551 *et seq.* and securities fraud in violation of Rule 10b-5 and 15 U.S.C. § 78jb and 18 U.S.C. §§ 2 and 3551 *et seq.* for his role in a scheme to profit from the manipulation of SLMI's stock. *Id.*, ¶ 7, exhibit F (indictment of Paul filed on August 2, 2004 in the U.S. District Court for the Eastern District of New York).[3] On August 10, 2004 the SEC filed a civil complaint against Paul in the United States District Court for the Central District of California, *SEC v. Paul,* 04cv06613, charging Paul and others with fraud in the manipulation of SLMI's stock. *Id.*, ¶ 9, exhibit H (civil complaint filed by SEC on August 10, 2004). Plaintiff Belland posted security for Paul's release on bond in the criminal action. *Id.*, ¶ 8, exhibit G (court order dated May 28, 2004 setting conditions of Paul's release and bond). On March 8, 2005 Paul entered a guilty plea to the securities fraud count in the superseding indictment. *Id.*, ¶ 10, exhibit I (copy of Paul's guilty plea). On or about May 4, 2005 Paul consented in *SEC v. Paul* to the entry of a Final Judgment Of Permanent Injunction And Other Relief Against Peter F. Paul. *Id.*, ¶ 11, exhibit J (copy of Paul's consent in *SEC v. Paul*). On June 25, 2009, Paul was sentenced to a prison term of ten years. *Id.*, ¶ 12, exhibit K (copy of Paul's sentencing order).

---

[3] In 2001, Paul fled to Brazil to evade prosecution, and was later arrested in Brazil and extradited to the United States.

The Lawsuits Against Marvel

On March 15, 2007, more than eight years after Lee entered into the SLE Employment Agreement, James Nesfield and several other individuals purporting to act on behalf of SLMI filed a lawsuit against Marvel demanding an accounting of profits and declaratory relief based on the allegation that SLMI possessed co-ownership rights to the Marvel characters. *Id.*, ¶ 13, exhibit L (copy of complaint filed by SLMI in *Stan Lee Media, Inc. v. Marvel*). On September 11, 2008 this Court dismissed the lawsuit subject to a properly constituted corporate entity's decision to retain counsel. *Id.*, ¶ 14, exhibit M (copy of Judgment dismissing SLMI's suit).

On January 26, 2009, Abadin, Belland, Nelson Thall and John Petrovitz filed a derivative complaint in this Court alleging thirteen causes of action against nine defendants. *Id.*, ¶ 15, exhibit N (copy of complaint filed by Abadin *et al* in *Abadin v. Marvel*). After defendants submitted letters requesting pre-motion conferences, plaintiffs agreed to amend the complaint. *Id.*, ¶ 16, exhibit O (copy of letter from counsel for plaintiffs dated April 6, 2009). On April 27, 2009, two of the original four plaintiffs, Abadin and Belland, filed an eight count amended complaint against three defendants. The amended complaint alleges five causes of action against Marvel: (i) violation of section 43(a) of the Lanham Act (Count II); (ii) tortious interference with contract (Count IV); (iii) aiding and abetting and/or conspiracy to breach fiduciary duty of care and loyalty (Count VI); (iv) constructive trust (Count VII) and (v) demand for accounting of profits (Count VIII). For the reasons set forth below, each of the claims against Marvel should be dismissed.

## ARGUMENT

**I.      PLAINTIFFS LACK DERIVATIVE STANDING TO SUE**

   To have derivative standing to sue on behalf of a corporation under federal and Colorado law (the state in which SLMI was incorporated), plaintiffs must own stock at the time of the complained-of transaction.  *See* FED. R. CIV. P. 23.1; Colo. Rev. Stat. § 7-107-402(1) (2008) (a derivative plaintiff must be "a shareholder of the corporation at the time of the transaction of which the plaintiff complains . . . .").  Further, in the Second Circuit, plaintiffs asserting derivative standing must prove contemporaneous ownership of stock based on a "core conduct" standard:

> [A] plaintiff must have owned stock in the corporation *throughout* the course of the activities that constitute the *primary* basis of the complaint . . . .  [A] proper plaintiff must have acquired his stock in the corporation before the core of the allegedly wrongful conduct transpired.

*In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003)[4]; *see also Lerner v. Allaire*, No. Civ. 3:02CV00964 (AWT), 2003 WL 22326504 (D. Conn. Sept. 30, 2003) (granting defendant's motion to dismiss where the core of the alleged wrongful conduct transpired before plaintiffs acquired stock).

   Neither Abadin nor Belland satisfies the contemporaneous ownership rule based on the core conduct standard.  The crux of the alleged wrongdoing underlying their claims is Lee's alleged wrongful conveyance to Marvel in November 1998 of rights to the Marvel characters, and Marvel's knowing and wrongful acceptance and subsequent exploitation of the Marvel characters.  Both plaintiffs, however, acquired their SLMI shares more than one year after all of that conduct had occurred.

---

[4] The Second Circuit has declined to adopt the "continuing wrong" doctrine, which some courts have applied to find derivative standing where the alleged conduct already began but was not completed at the time the plaintiff became a shareholder.  *In re Bank of N .Y .*, 320 F.3d at 298.

Specifically, plaintiffs allege that Lee and Marvel caused a wrongful transfer of the rights to the Marvel characters when Lee entered into the Marvel Employment Agreement "on or about November 17, 1998." Am. comp., ¶ 65. They further allege that Marvel's conspiracy to breach fiduciary duty occurred "on or about November 1998." *Id.*, ¶ 162. Hence, the core of the alleged conduct from which all of plaintiffs' additional allegations of wrongdoing arise occurred in November 1998. Absent that alleged conduct, there could be no basis for any of the remaining allegations against Marvel. *Id.*, ¶¶ 110-111, 136, 161. Yet, Belland and Abadin did not become shareholders of SLMI until November and December 1999, respectively. *Id.*, ¶¶ 13-14. Because plaintiffs were not shareholders before, or even during, the core of the allegedly wrongful conduct, they lack derivative standing to sue Marvel.

## II.    <u>PLAINTIFFS FAIL TO SATISFY THE PLEADING STANDARD</u>

A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The pleading standard under FED. R. CIV. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombley*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* Furthermore, if plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

In *Iqbal*, the Court made this "plausibility standard" expressly applicable to all claims subject to FED. R. CIV. P. 8. *Iqbal*, 129 S. Ct. at 1951 (holding that bare assertions

relating to such elements as an individual's knowledge, willfulness, agreement or instrumental role in alleged conduct, without supporting factual allegations, are conclusory and "amount to nothing more than a formulaic recitation of the elements of a . . . claim"). *Iqbal* makes clear that conclusory statements are not entitled to a presumption of veracity and that courts should not "credit a complaint's conclusory statements without reference to its factual context." *Id*. at 1954.

        After *Twombly*, and even before *Iqbal*, the Southern District of New York had on numerous occasions dismissed claims that failed to meet the plausibility standard. *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 794-95 (S.D.N.Y. 2008) (dismissing plaintiff's civil conspiracy claim as not plausible where the allegations were conclusory and lacking factual detail as to time and place); *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579-80 (S.D.N.Y. 2009) (dismissing Lanham Act § 43(a) claim where allegations did not create any plausible inference of likelihood of confusion); *Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 361-62 (S.D.N.Y. 2007) (dismissing tortious interference claim for failing to allege facts that would make the claim plausible).

        As discussed below, four of the five claims against Marvel are bereft of sufficient factual allegations to create any plausible inference of wrongdoing and should be dismissed for that reason alone.

## III. PLAINTIFFS' LANHAM ACT § 43(a) CLAIM AGAINST MARVEL FAILS BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED, IT IS UNSUPPORTED BY PLAUSIBLE FACTS, AND THERE IS NO ALLEGATION THAT SLMI EVER USED THE MARKS

    A.   *The statute of limitations for this claim has expired.*

        For a Lanham Act claim brought in New York federal district court, New York law provides the appropriate statute of limitations, and federal law governs when the claim accrues. *See Gristede's Foods, Inc. v. Unkechauge Nation*, No. 06-CV-1260 (CBA), 2008 WL 3334032, at *3 (E.D.N.Y. Aug. 8, 2008) (citing *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir.

1993)).  The most analogous statute of limitations for a Lanham Act claim is the six-year period

for fraud claims pursuant to N.Y. C.P.L.R. § 213(8), whether the plaintiff seeks either or both

monetary and equitable relief.  *Gristede's Foods Inc.*, 2008 WL 3334032, at *3 (citing *Conopco,*

*Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191-92 (2d Cir. 1996) (applying New York's six-year

statute of frauds to a Lanham Act claim)); *Solow Bldg. Co. v. Nine West Group, Inc.*, No., 00

Civ. 7685 (DC), 2001 WL 736794, at *3 (S.D.N.Y. June 29, 2001), *aff'd*, 48 F. App'x 15 (2d

Cir. 2002) ("The limitations period that courts apply to Lanham Act cases is six years.").  A

Lanham Act claim accrues when a plaintiff knows or has reason to know of his injury.  *Solow*

*Bldg. Co.,* 2001 WL 736794, at *4.

        The amended complaint alleges that Marvel has "for nearly 20 years been

developing, producing, marketing and selling" the Marvel name.  Am. comp., ¶ 25.  By virtue of

the public nature of the marketing and exploitation of these "world famous" marks (*Id.*, ¶ 26),

SLMI cannot reasonably deny that it was aware of Marvel's alleged trademark infringement at

the time of the SLE Employment Agreement or the Marvel Employment Agreement.

Consequently, the six-year statute of limitations began to accrue not later than October or

November 1998, when plaintiffs knew or should have known that the trademarks SLMI

purportedly acquired from Lee were being publicly exploited by Marvel.  The statute of

limitations on plaintiffs' Lanham Act claim, therefore, expired no later than November 2004.

and should be dismissed.

        Plaintiffs can offer no reasonable excuse for their delay in bringing suit.

Although they have asserted in their pre-motion submissions that SLMI's bankruptcy proceeding

tolled the time bar on their claims in this action, they are wrong.  Bankruptcy Code § 108(a)

provides that a debtor's time to commence an action is the later of:  (1) the end of the period

provided under the applicable statute of limitations; or (2) two years after the order of relief.  11

U.S.C. § 108(a). *GNK Enters., Inc. v. Conagra, Inc.*, 197 B.R. 444, 448 (Bankr. S.D.N.Y. 1996)

(citing 11 U.S.C. § 108(a)). *See also Olympia & York Maiden Lane Co., LLC v. Tax Comm'n of

City of N.Y.*, 233 B.R. 662, 668 (Bankr. S.D.N.Y. 1999) (recognizing that § 108(a) can be

applied to extend the limitations period for claims by debtor-in-possession). Therefore, plaintiffs

had the longer of the original statute of limitations (which expired in November 2004) or two

years from February 2001, the date SLMI filed its bankruptcy petition, to assert their claims.

*State Street Assocs. L.P. v. N.Y. State Urban Dev. Corp.*, 323 B.R. 544, 555 (Bankr. N.D.N.Y.

2005) (starting the two-year extension under § 108(a)(2) on the date the plaintiff filed its

voluntary chapter 11 petition). Either way, the limitations period has long expired for plaintiffs'

Lanham Act claim.

   Plaintiffs erroneously rely on N.Y. C.P.L.R. § 204(a) in their pre-motion papers to

argue that the statutes of limitations on their claims were tolled. Section 204 provides that,

where the commencement of an action has been stayed by a court or statute, the duration of the

stay is tolled for purposes of the statute of limitations. As shown above, Bankruptcy Code § 108

governs the limitations period for claims by a debtor in possession. Although another provision,

Bankruptcy Code § 362, provides for an automatic stay, that section operates only to stay actions

*against*, not by, a bankruptcy debtor. *See* 11 U.S.C. § 362. Accordingly, N.Y. C.P.L.R § 204(a)

did not toll any statutes of limitations applicable to plaintiffs' claims.

  B.  *Plaintiffs fail to allege a sufficient factual basis to render the infringement claim
     covering the MARVEL trademark plausible.*

   Plaintiffs' failure to allege the extent of SLMI's interest in the MARVEL

trademark renders their Lanham Act claim implausible on its face. Plaintiffs themselves admit

that they do not know if Lee ever held such interest. Am. comp., ¶ 106 (alluding to "Stan Lee's

interest, *if any*, in the Marvel trademark . . . .") (emphasis added). The MARVEL trademark has

been a registered trademark of Marvel since 1967, with a date of first use of 1939. Conlan

declaration, ¶ 17, exhibit P (copies of trademark registrations of the MARVEL mark filed with the U.S. Patent and Trademark Office). Plaintiffs' unsupported and equivocal allegation that SLMI is the owner of the MARVEL trademark by assignment is flatly contradicted by the fact that Marvel has been the publicly-registered owner of that mark for more than forty uninterrupted years. Plaintiffs fail to provide any plausible factual basis for Lee's alleged interest in the MARVEL mark (Am. comp., ¶ 82), much less the transfer of that alleged interest to SLMI. Accordingly, this claim should be dismissed.

>      C.      *Even if SLMI somehow acquired rights in the MARVEL and STAN LEE*
>              *PRESENTS trademarks, which it did not, SLMI abandoned these rights through*
>              *non-use.*

Non-use of a trademark for three consecutive years is prima facie evidence of abandonment. *See* 15 U.S.C. § 1127; *Phillips-Van Heusen Corp. v. Calvin Clothing Co.,* 444 F. Supp. 2d 250, 255 (S.D.N.Y. 2006). Assuming that SLMI became the owner of the MARVEL trademark in 1998 (which it did not), and that plaintiffs can demonstrate that SLMI owns the STAN LEE PRESENTS trademark, they nevertheless failed to allege any use of the marks by SLMI. This is prima facie evidence of abandonment. Moreover, a bare assumption of possible future use is not enough to rebut this presumption of abandonment. *Silverman v. CBS Inc.*, 870 F.2d 40, 47 (2d Cir. 1989). Because plaintiffs cannot rebut the presumption of abandonment, this claim should be dismissed.

## IV.    THE CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT SHOULD BE DISMISSED BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED AND THE ALLEGATIONS HAVE NO PLAUSIBLE FACTUAL BASIS

>      A.      *The statute of limitations for this claim has expired.*

Plaintiffs' claim of tortious interference with contract is subject to a three-year statute of limitations. *See Cary Oil Co. v. MG Refining & Mktg., Inc.*, 90 F. Supp. 2d 401, 419 (S.D.N.Y. 2000) (applying the three-year period under N.Y. C.P.L.R. § 214(4) to tortious

interference with contract).  *See also Kartiganer Assocs., P.C. v. Town of New Windsor*, 108 A.D.2d 898, 899, 485 N.Y.S.2d 782, 784 (2d Dep't 1985) (holding that three-year limitations period of N.Y. C.P.L.R. § 214(4) applies because a claim for inducing breach of contract is considered an action to recover damages for an injury to property).  The statute of limitations accrues from the time the injury is sustained.  *Cary Oil Co., Inc.*, 90 F. Supp. 2d at 419 n.106.

The allegations in the amended complaint indicate that plaintiffs' injury first occurred in November 1998, when the rights to the Marvel characters were allegedly wrongfully conveyed in the Marvel Employment Agreement.  Am. comp., ¶¶ 65, 135-38.  Thus, plaintiffs' claim for tortious interference accrued in November 1998, and the three year statute of limitations expired in November 2001.

Plaintiffs can offer no reasonable excuse for their delay.  Their suggestion that the defendants concealed their actions (*Id.*, ¶¶ 67, 68) and therefore prevented plaintiffs from timely asserting their claims is not supported by any facts showing or even suggesting concealment by defendants.  *Cary Oil Co., Inc.* 90 F. Supp. 2d at 419 (requiring allegation of affirmative acts of misrepresentation or concealment in order to apply equitable tolling).  Moreover, a plaintiff seeking equitable tolling must allege due diligence in attempting to discover and bring the claim.  *Id.* (declining to equitably toll and dismissing a tortious interference claim where plaintiff failed to allege diligence in discovering and bringing the claim).  Plaintiffs do not allege any due diligence or other effort to discover and commence their claim, and they fail to explain how they were unaware of Marvel's long term and ongoing public exploitation of the Marvel characters and other intellectual property rights at issue.  Accordingly, there is no reasonable excuse for the delay in asserting their claims.

      **B.**    *Plaintiffs' allegations regarding Marvel's knowing interference is wholly conclusory and lacks a plausible factual basis.*

A claim of tortious interference with contract requires plaintiffs to allege that Marvel knew of the SLE Employment Agreement and intentionally procured Lee's breach of that agreement. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (setting forth the elements of the cause of action and citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 646 N.Y.s.2d 76 (N.Y. 1996)).  However, plaintiffs' allegation that Marvel "knowingly and intentionally" induced breach of the SLE Employment Agreement (Am. comp., ¶ 136), is conclusory and insufficiently pleaded. *See Iqbal,* 129 S. Ct. at 1951 (finding a claim to be insufficiently pleaded where respondent's allegation that petitioners "knew of, condoned, and willfully and maliciously agreed . . ." amount to "nothing more than 'formulaic recitation of the elements'" and as such, are "conclusory and not entitled to be assumed as true.").

Plaintiffs fail to allege any factual basis for their bald allegation that Marvel knew that the terms of the SLE Employment Agreement included assigning the rights at issue to SLMI. Even SLMI's own filings with the SEC omitted any mention of said rights.  Conlan declaration, ¶ 2, exhibit A (SLMI's Form 10-KSB filed on March 20, 2000). There is no allegation in the amended complaint from which one could plausibly infer that Marvel knew that Lee's execution of the Marvel Employment Agreement would cause Lee to breach his agreement with SLMI. Therefore, plaintiffs' claim of tortious interference with contract should be dismissed.

**V.**    **THE CLAIM OF AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND/OR CONSPIRACY TO BREACH FIDUCIARY DUTY SHOULD BE DISMISSED BECAUSE THE STATUTE OF LIMITATIONS HAS EXPIRED AND THERE IS NO FACTUAL BASIS FOR THE CLAIM**

Plaintiffs' cause of action for aiding and abetting breach of fiduciary duty also appears to plead conspiracy as an alternate theory.  Both theories, however, suffer from the same infirmities and should be dismissed.

A.     *The statute of limitations for this cause of action has expired.*

A claim for aiding and abetting fiduciary breach, where the relief sought is monetary, is subject to a three-year statute of limitations.  *Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 451-53 (S.D.N.Y. 1998) (applying the three-year rather than six-year statute of limitations where the plaintiff sought monetary relief).  The statute of limitations begins to run when the fiduciary duty is breached.  *Id.* at 452.

A claim for civil conspiracy is also subject to a three year limitations period.  In New York, civil conspiracy is not an independent tort, and must be connected to a separate underlying tort.  *Alexander & Alexander Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547 (1986).  The statute of limitations for civil conspiracy is the same as that of the underlying tort.  *Brady v. Lynes*, No. 05 Civ. 6540 (DAB), 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008) (citing *Schlotthauer v. Sanders*, 545 N.Y.S.2d 197, 199 (2d Dep't 1989) (dismissing plaintiff's civil conspiracy claim where the underlying fraud claim was time barred).  Here, the underlying tort is Lee's alleged fiduciary breach when he purportedly diverted SLMI's interest in the Marvel characters and trademarks.  Am. comp., ¶¶ 146, 162.  This underlying claim is subject to N.Y. C.P.L.R. § 214(4)'s three-year statute of limitations because the relief sought is monetary, rather than equitable.  *Id.*, ¶ 156; *see Fezzani v. Bear, Stearns & Co.,* No. 99 Civ. 0793 (RCC), 2004 WL 1781148, at *2-3 (S.D.N.Y. Aug. 10, 2004) (citing *Cooper v. Parsky*, 140 F.3d 433, 440-41 (2d Cir. 1998) (holding that the three-year limitations period under N.Y. C.P.L.R. § 214 applies where a claim for fiduciary breach seeks monetary relief, whereas the six-year period under N.Y. C.P.L.R. § 213 applies where equitable relief is sought)).  The limitations period begins to accrue at the time plaintiffs had actual or constructive knowledge of the injury.  *Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 741-43 (S.D.N.Y. 1997).

Plaintiffs' cause of action for aiding and abetting breach of fiduciary duty and/or conspiracy to breach fiduciary duty is premised on the allegation that Marvel participated in Lee's fiduciary breach by conveying to Marvel the rights to the Marvel characters and the MARVEL trademark (Am. comp., ¶¶ 146, 161-162) and it appears to seek only monetary relief. *Id.*, ¶ 174. Plaintiffs allege that this underlying fiduciary breach occurred in November 1998, when the Marvel Employment Agreement was executed. *Id.*, ¶¶ 65, 162. Because Marvel's exploitation of these allegedly diverted assets was well-known before and after November 1998, SLMI knew or should have known of its injury at that time. Thus, plaintiffs' cause of action for aiding and abetting fiduciary breach and/or conspiracy expired three years after the date of the Marvel Employment Agreement, in November 2001. Even if a six-year limitations period were applicable, the claim would have expired in November 2004. As such, the cause of action should be dismissed as untimely.

Plaintiffs cannot reasonably argue that this cause of action should be tolled. Where there is no allegation that a defendant made any active misrepresentations, and where a defendant did not owe a fiduciary duty to plaintiff, an aiding and abetting claim is based in constructive fraud rather than actual fraud. *Kaufman v. Cohen*, 307 A.D.2d 113, 126, 760 N.Y.S.2d. 157, 170 (1st Dep't 2003). Equitable tolling is unavailable in cases alleging constructive fraud. *Id.* Plaintiffs do not allege that Marvel made any active representation to SLMI in aiding and abetting Lee's fiduciary breach. Nor do plaintiffs allege that Marvel owes a fiduciary duty to SLMI. Therefore, equitable tolling is unavailable for this claim.

Equitable estoppel is inapplicable here because plaintiffs fail to allege and cannot allege that they were unable to discover the facts underlying their claim. *See also Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 744 (S.D.N.Y. 1997) (holding that plaintiff's burden of pleading equitable estoppel was not met where he failed to assert that the facts

underlying his fiduciary breach claim could not have been discovered within the limitations period). Therefore, this cause of action should be dismissed.

      B.    *There is no factual basis for the aiding and abetting claim to render it plausible.*

      A claim of aiding and abetting a fiduciary breach must allege, among other things, that defendant knowingly induced or participated in the breach of fiduciary duty. *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998). To satisfy this pleading requirement, the claim must allege that defendant had actual knowledge of the fiduciary breach. *Kaufman v. Cohen*, 307 A.D.2d at 125, 760 N.Y.S.2d. at 169. *See AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6, 24, 867 N.Y.S.2d 169, 183 (2d Dep't 2008) (dismissing claim of aiding and abetting fiduciary breach where plaintiff failed to plead actual knowledge of the breach).

      Plaintiffs' aiding and abetting claim suffers the same defect as their claim for tortious interference with contract. Plaintiffs' allegation regarding Marvel's actual knowledge of the terms of the SLE Employment Agreement is wholly conclusory: "Upon information and belief, Marvel . . . knew of the terms and existence of the [SLE Employment Agreement] as of the date of its execution and/or before execution of the [Marvel Employment Agreement]." Am. comp., ¶ 135. This allegation is insufficient. *See Kaufman*, 307 A.D.2d at 125, 760 N.Y.S.2d at 169 (finding plaintiff's allegation of actual knowledge "extremely sparse and wholly conclusory" where plaintiff merely pleads that, "Upon information and belief, [defendants] were aware of [plaintiff]'s prior involvement with and beneficial ownership interest in the Falchi Building, and therefore knew of the fiduciary duty owed to plaintiffs . . . ."). Plaintiffs fail to allege any facts giving rise to a plausible inference of Marvel's knowledge and as such a critical element of the alleged tort is missing. The claim of aiding and abetting a fiduciary breach should be dismissed.

C.    *The claim for conspiracy is not plausible because it fails to allege specific times, facts or circumstances of a conspiracy.*

To survive a motion to dismiss, a civil conspiracy claim "must contain more than general allegations in support of the conspiracy.  Rather, it must allege the specific times, facts and circumstances of the alleged conspiracy."  *Brownstone Inv. Group v. Levy*, 468 F. Supp. 2d 654, 661 (S.D.N.Y. 2007).  The complaint must "allege some factual basis for a finding of a conscious agreement among the defendants."  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990).  Allegations of conspiracy are too conclusory to survive a motion to dismiss where a plaintiff does "not provide any details of time and place, and . . . fail[s] to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense."  *Ciambrello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

The only allegations in the amended complaint that can be read to allege an agreement between Marvel and the other defendants read as follows:  "Upon information and belief, beginning on or about November 1998 and at various times after that . . . [the Defendants] met, joined together, planned, and conspired to take the Property and Rights of SLM . . . ." and "Marvel and Lieberman conspired with Lee to continue to market, distribute, produce and sell Marvel characters."  Am. comp., ¶¶ 162, 168.  These assertions are mere legal conclusions and are unsupported by factual allegations.  *Twombly*, 550 U.S. at 555 ("[A]ssertion of an unlawful agreement was a 'legal conclusion' and, as such, was not entitled to the assumption of truth.").  A civil conspiracy claim with nearly identical language was recently dismissed by this Court.  *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 795 (S.D.N.Y. 2008) (rejecting plaintiff's allegation that "upon information and belief, [defendants] conspired, agreed, and planned to use [plaintiff]'s confidential and proprietary information . . . .").  In *Medtech*, the Court found that such an allegation "merely concludes that an agreement existed without any

factual basis to make the allegation *plausible*." *Id*. at 795. Plaintiffs' baseless conspiracy claim

should likewise be dismissed.

## VI.    PLAINTIFFS' DEMANDS FOR THE IMPOSITION OF A CONSTRUCTIVE TRUST AND FOR AN ACCOUNTING OF PROFITS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS

> A.    *Plaintiffs have no basis for their causes of action for imposition of a constructive trust and for an accounting of profits from Marvel because their claims depend on Lee's ownership in the Marvel characters and the statute of limitations on any copyright ownership claim by Lee expired decades ago.*

Plaintiffs' causes of action for imposition of a constructive trust and for an

accounting of profits – Counts VII and VIII – concerning the Marvel characters depend on the

assertion that SLMI is the owner of a copyright interest in the Marvel characters. In order to

establish that SLMI has a copyright interest in the Marvel characters, however, plaintiffs must

first establish that Lee held an ownership interest in the Marvel characters that he could have

assigned to SLMI in 1998. Wholly apart from the fact that Lee denies ever having any rights in

such characters because his contributions were "work made for hire," the statute of limitations

for any theoretical ownership claim Lee might have made with respect to those characters has

long expired.

"[P]laintiffs claiming to be co-authors are time-barred three years after accrual of

their claim from seeking a declaration of copyright co-ownership rights and any remedies that

would flow from such a declaration." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996). Claims

of sole copyright ownership are subject to the same limitations period as claims of copyright co-

ownership. *Barksdale v. Robinson*, 211 F.R.D. 240, 244 (S.D.N.Y. 2002) (applying the three-

year statute of limitations for copyright co-ownership claims under the Copyright Act to claim of

copyright sole ownership). Moreover, since "the first element of any infringement claim is

copyright ownership," a claim for copyright infringement will be barred where a defendant has

expressly asserted its ownership and/or expressly repudiated plaintiff's ownership. *Tolliver v.*

*McCants*, No. 05 Civ. 10840 (JFK), 2009 WL 804114, at *9 (S.D.N.Y. Mar. 25, 2009) ("It has

been noted with approval that this rule – that past notice of an ownership dispute can bar all

future copyright claims – creates 'something like adverse possession to copyright ownership.'"

*citing Zuill v. Shanahan,* 80 F.3d 1366, 1370 (9th Cir.1996)); *see also Margo v. Weiss,* No. 96

Civ. 3842 (MBM), 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998), *aff'd,* 54 U.S.P.Q.2d 1769 (2d

Cir. 2000) (holding that the plaintiffs' copyright claim was barred where the defendant had

registered copyright in his own name and where the plaintiffs failed to exercise reasonable

diligence to determine if they could have asserted co-ownership rights); *Santa-Rosa v. Combo*

*Records*, 471 F.3d 224, 228 (1st Cir. 2006) (holding that the plaintiff's copyright claim was time-

barred where the defendant "openly, and quite notoriously, sold [plaintiff's] records without

providing payment to him" and where the plaintiff had reason to know of his claim of

ownership).

        Lee's theoretical claim of copyright ownership with respect to the Marvel

characters expired long before the SLE Employment Agreement came into existence.  Marvel

has been exploiting all of the Marvel characters since the 1960s, and registered the copyrights on

the Marvel characters around that time.  *See* Pinkus declaration, ¶ 3, exhibit A (copies of

copyright registrations of the Marvel characters).  During the time that Marvel has exploited the

characters, Lee was paid as an employee of Marvel and its corporate predecessors.  Am. comp., ¶

40.  Plaintiffs do not and cannot allege Lee's ignorance of  Marvel's exploitation of the Marvel

characters or Lee's ignorance of Marvel's failure to pay him royalties in connection with that

exploitation.  Nor do plaintiffs allege that Lee asserted or attempted to assert any ownership

rights.  Plaintiffs acknowledge that Marvel "copyrighted" the Marvel characters (*Id.*, ¶ 40) and

cannot deny that Lee had knowledge of such actions.  Given Marvel's continuous, open and

notorious assertions of ownership of the Marvel characters since their creation, and its

continuous repudiation of Lee's alleged ownership, Lee's theoretical claim for copyright ownership in relation to the Marvel characters is time-barred.  Plaintiffs, therefore, cannot establish that Lee held any ownership interest to assign to SLMI in 1998, and their claims for an accounting and the imposition of a constructive trust must fail.

       B.     *The statutes of limitations for plaintiffs' constructive trust and accounting claims have expired.*

Even if the statute of limitations on any copyright ownership claim by Lee had not expired by 1998, plaintiffs' independent claim of a copyright ownership interest in the Marvel characters expired in 2001.  The recent decision by this Court in *Tolliver v. McCants* is instructive on this issue.  In *Tolliver*, the plaintiff sued for copyright infringement after learning that the defendant had licensed the rights to a song composition without permission from the plaintiff.  2009 WL 804114, at *7.  The defendant claimed that he owned the rights to the composition by assignment, and moved for summary judgment on statute of limitations grounds, arguing that the plaintiff was on notice that the defendant owned the rights.  *Id.,* at **7, 12.  The court found that because the defendant had never asserted his ownership interest to the plaintiff and never otherwise advised the plaintiff that he was disputing the plaintiff's ownership interest, the plaintiff was not on notice of an ownership dispute with the defendant.  *Id.*  The court held that the defendants' statute of limitations argument failed as a matter of law.  *Id.*

Here, in contrast, Marvel registered the copyrights and trademarks covering the Marvel characters in the 1960s and 1970s, and exploited the characters for decades afterward, including during and after the time the rights were allegedly assigned to SLMI.  Am. comp., ¶¶ 25, 40.  There is no allegation that, since 1998, SLMI ever objected to Marvel's ownership interest or claimed its own ownership interest in the Marvel characters until the first "SLMI"

lawsuit was filed in March 2007.[5]  On the other hand, Marvel continued to exploit the Marvel characters after 1998 and openly asserted its ownership interest.  Plaintiffs do not allege that SLMI made any effort to investigate the merits of Marvel's ownership claim at the time it allegedly acquired its ownership interest, and they do not allege that SLMI ever gave notice to Marvel that SLMI owned the rights to the Marvel characters.  Thus, in contrast to the defendants in *Tolliver*, SLMI was on clear notice of Marvel's claim of copyright ownership of the Marvel characters.  Having failed to assert a timely ownership claim to those characters SLMI's independent claim to a copyright interest in the Marvel characters is time-barred.

In view of the foregoing, plaintiffs' causes of action for the imposition of a constructive trust and for an accounting of profits are time-barred because they are based on an implicit and necessary assertion of copyright ownership.  SLMI's ability to assert a copyright ownership claim expired no later than November 2001, three years after the claim accrued.  *See Merchant*, 92 F.3d at 56 (dismissing plaintiff's claim for a declaration of copyright ownership and an accounting of profits as time-barred); *Tomas v. Gillespie*, 385 F. Supp. 2d 240, 246 (S.D.N.Y. 2005) (finding the plaintiff's claims for accounting and constructive trust time-barred because her claim of copyright co-ownership was time-barred); *Tolliver,* 2009 WL 804114, at *11 citing *Big East Entm't, Inc. v. Zomba Enter., Inc.,* 453 F. Supp. 2d 788, 796 (S.D.N.Y. 2006), *aff'd*, 259 F. App'x 413 (2d Cir. 2008) (concluding that "[b]y virtue of [defendant's] prior copyright registration and the failure of [plaintiff] to act for over a decade, [plaintiff's] ownership or infringement claims are time-barred.").

---

[5] Even assuming it is true that the SLE Employment Agreement "was recorded on behalf of SLM on or about November 28, 2006 with the United States Copyright Office," and that such recordation covered the Marvel characters, SLMI failed to assert an ownership interest for more than eight years.

Plaintiffs do not allege any grounds for tolling the limitations period, equitable or otherwise, and there could be no such grounds because Marvel's development, marketing and continuous exploitation of the Marvel characters has been well known since 1998, and for many years prior. As such, these claims should be dismissed.

## VII.    PLAINTIFFS SHOULD BE REQUIRED TO POST A BOND FOR COSTS

Rule 54.2 of the Local Rules of this Court vests the Court with discretion on motion or its own initiative "to order any party to file an original bond for costs . . . ." In deciding whether to require a party to post a bond, courts generally consider the financial condition and ability to pay of the party at issue, whether that party is a non-resident or foreign corporation, the merits of the underlying claims, the extent and scope of discovery, the legal costs expected to be incurred; and compliance with past court orders. *Selletti v. Carey*, 173 F.R.D. 96, 100-01 (S.D.N.Y. 1997) (imposing a $50,000 bond), *aff'd*, 173 F.3d 104 (2d. Cir. 1999). In deciding the amount of bond, "[u]nder Local Rule 54.2, security for costs may include attorney's fees to which a party is potentially entitled by statute." *Bressler v. Liebman*, No. 96 Civ. 9310 (LAP), 1997 WL 466553, at *3 (S.D.N.Y. Aug. 14, 1997); *see also Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 126 F.R.D. 33, 37 (S.D.N.Y. 1989).

Here, neither Abadin nor Belland is a resident of New York. Am. comp., ¶¶ 5, 6. As such they should be required to post a cash bond in an amount sufficient to cover Marvel's costs and/or fees in this litigation.[6] In addition, as Abadin and Belland have sued under the

---

[6] Parenthetically, it is clear that SLMI does not have sufficient assets to cover Marvel's costs and fees. SLMI is a company that languished in bankruptcy for nearly seven years without successfully reorganizing under chapter 11. SLMI's bankruptcy schedules listed its assets as $0 and its liabilities as $11,114,997.15. Conlan declaration, ¶ 3, exhibit B (bankruptcy petitions of SLMI and its Delaware subsidiary, Stan Lee Media, Inc.). Courts in the Southern District have routinely required plaintiffs to post significant bonds where plaintiffs have no reachable assets. *See, e.g.*, *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251-52 (2d Cir. 1987) ($10,000 bond ordered where plaintiff is a debtor in bankruptcy with no liquid assets); *Beverly Hills Design Studio*, 126 F.R.D. at 36 (ordering $20,000 bond and noting that "cases requiring a security bond generally involve plaintiffs with no reachable assets");

(continued...)

Lanham Act, which expressly provides that in "exceptional cases" the Court may award reasonable attorney fees to the prevailing party (15 U.S.C. § 1117(a)), the bond should include attorneys' fees to which Marvel is entitled. Plaintiffs have, without standing, asserted entirely baseless claims to Marvel's assets, and an award of attorneys' fees is entirely proper and should be included for purposes of determining the amount of the bond. When James Nesfield purported to sue Marvel on behalf of SLMI in 2007, Marvel was the sole defendant in a two count complaint, and the Court required a $25,000 bond for costs. Here, the amended complaint includes eight causes of action and three different parties are in need of protection. Under these circumstances, a bond of at least $50,000 is necessary security for the protection of Marvel.

## CONCLUSION

For all the foregoing reasons, plaintiffs' amended complaint should be dismissed in its entirety, with prejudice.

Dated:  New York, New York             PAUL, HASTINGS, JANOFSKY
      July 20, 2009                        & WALKER LLP


By:  /s/ Lawrence J. Conlan
     David Fleischer
     Lawrence J. Conlan
*Attorneys for Defendant*
  Marvel Entertainment, Inc.
75 East 55th Street
New York, NY  10022-3205
(212) 318-6000

---

(...continued)

*Oilex A.G. v. Mitsui & Co. (U.S.A.), Inc.*, 669 F. Supp. 85, 88 (S.D.N.Y. 1987) ($25,000 bond ordered where plaintiff has no assets or is out of business).

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2009, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MARVEL'S MOTION TO DISMISS THE AMENDED COMPLAINT was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of this Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

  /s/ Lawrence J. Conlan
  Lawrence J. Conlan